**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ILENE TOWNSEND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 15-1260-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding the record evidence will not support the Administrative Law Judge's (ALJ) mental residual functional capacity (RFC), the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

**I.      Background**

Plaintiff applied for DIB, alleging disability beginning April 15, 2009.  (R. 18, 151).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the ALJ erred in her

RFC assessment by making inconsistent findings regarding Plaintiff's social functioning, by failing to assess limitations in social functioning, and by failing her duty to develop the record regarding social functioning. She also argues that the ALJ erred in evaluating the credibility of Plaintiff's allegations of limitations resulting from her symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the record evidence will not support the ALJ's mental RFC assessment.  Plaintiff may make her arguments regarding duty to develop the record, specific limitations in social functioning, and credibility to the Commissioner on remand.

## II.     Social Functioning

Plaintiff points out that in her step two evaluation the ALJ made inconsistent findings regarding Plaintiff's social functioning, finding both that Plaintiff has no difficulties in social functioning and that she has a moderate impairment in social functioning.  (Pl. Br. 12) (citing R. 22).  She argues that the ALJ assessed no mental limitations attributable to her difficulties with social functioning, but that the evidence supports such limitations.  Id. at 12-13.  She argues that the ALJ's explanation of Plaintiff's social anxiety is not supported by the record evidence, assumes without evidentiary support that working would be an escape from her social situation, and does not explain how she arrived at the conclusion that Plaintiff would be off-task only ten percent of a workday.  Id. at 13-15.  The Commissioner argues that the ALJ made a scrivener's error in her step three discussion, noting both no social limitations and moderate social limitations, but argues that the error "should not be a basis for remand."

(Comm'r Br. 5) (citing <u>Davis v. Erdmann</u>, 607 F.2d 917, 918-19 n.1 (10th Cir. 1979) ("While we may not supply a reasoned basis . . . that the agency itself has not given . . . we will uphold a decision of less than ideal clarity <u>if the agency's path may reasonably be discerned</u>.") (citations omitted, emphasis added)).  She argues that a step three finding of moderate limitations in one of the four basic mental functional areas "does not necessarily translate to a work-related functional limitation" in RFC.  <u>Id.</u> at 6 (citing <u>Vigil v. Colvin</u>, 805 F.3d 1199, 1203 (10th Cir. 2015) (moderate limitations in concentration, persistence, or pace)).  Finally, the Commissioner argued that the ALJ adequately considered and explained Plaintiff's social situation.  <u>Id.</u>

As both parties recognize, the ALJ's step three consideration of social functioning provided inconsistent statements regarding Plaintiff's limitations in this regard:

> <u>In social functioning, the claimant had no difficulties</u>.  The claimant indicated in her function report that large groups of people cause her anxiety. (Exhibit 4E)  However, she also indicated she socializes on a frequent basis with her boyfriend, family and other friends.  She also lives with her ex-husband, who has frequent visitors; although she indicates she spends time in her room when this happens. (Exhibit 17F)  The claimant shops without difficulty.  Given her living situation, discussed below, much of her social anxiety may be attributed to this difficulty.  However, there is sufficient evidence outside of that to <u>support a moderate level of impairment</u>.

(R. 22) (emphases added).

In her RFC assessment, the ALJ cited Plaintiff's daily activities and noted that Plaintiff "reported no problems with personal care, makes meals, does household chores,

shops, visits with friends, [and] goes out to dinner with family and her boyfriend." (R. 24). And she contrasted Plaintiff's daily activities with her reports of social functioning:

> However, she reports problems with being around large groups of people, which contradicts some of her reporting and was not significantly reported to psychological examiners. She confirmed these activities at hearing and to psychological providers. (Exhibit 17F) These allegations do not support a disabling level of impairment.

(R. 24). The ALJ also tangentially discussed social functioning later in her RFC assessment when she evaluated Plaintiff's mental health and her pain:

> The claimant had some individual therapy, mainly to address her living situation, where she was forced due to financial reasons to continue living with her ex-husband, performing maid services in exchange for rent. In May 2013, she noted improvement in her condition after not being in her house and going to visit her mother. This evidence, decline in GAF, but improvement when being out of her living situation, [sic (suggests?)] that non-vocational factors have a strong impact on the claimant's condition. Work would actually be an escape were this to be carried to its logical conclusion, for both her daily situation and her long term ability to leave. Regardless, this strongly suggests that her work functioning would not be as strongly impacted by her condition. The claimant's pain component appears to be the manifestation of her psychological condition, which is addressed above, but her off-task and absence limitations also help account for these conditions.

(R. 26).

The Commissioner cites Davis for the proposition that although the court may not provide a post-hoc rationale for the ALJ's decision, it can "uphold a decision of less that ideal clarity." Davis, 607 F.2d at 918-19 n.1. While the proposition relied upon by the Commissioner is precedent binding on this court, it has a caveat--"if the agency's path may reasonably be discerned." Id. And, that caveat, cited in the footnote in Davis, is a

quotation from the Supreme Court's decision in <u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419, U.S. 281, 285, 286 (1974).  Thus, the court may uphold the ALJ's decision only "if the agency's path may reasonably be discerned."  The court discerns a circuitous path to the ALJ's RFC findings regarding Plaintiff's mental impairments, but it also finds that path is not supported by record evidence.

      The Commissioner argues that the ALJ's two inconsistent statements regarding Plaintiff's difficulties with social functioning are merely a scrivener's error, but she does not suggest which statement is erroneous and should be disregarded.  Clearly, one of the statements is a scrivener's error, and the court finds the statement that Plaintiff has no difficulties in social functioning is the erroneous one.  This is so because immediately after that statement the ALJ summarized Plaintiff's assertions that large groups of people cause her anxiety, that she socializes with people she knows, and that her ex-husband with whom she lives has frequent visitors and she retreats to her room when this occurs.  (R. 22).  The ALJ seems to accept Plaintiff's assertions at face value and attributes her difficulties in social functioning to her living situation--because of financial pressures she continues to live with her ex-husband and pays for that privilege by providing housecleaning services to him.  <u>Id.</u>  In her conclusion regarding social functioning, the ALJ states that "there is sufficient evidence <u>outside of that</u> [(presumably outside of Plaintiff's living situation)] to support a moderate level of impairment."  (R. 22) (emphasis added).  The court finds that the ALJ found moderate difficulties in social functioning outside of Plaintiff's living situation.

But, even after making that finding, the ALJ equivocated regarding Plaintiff's social functioning. As quoted above, she later referred to Plaintiff's report of problems being around large groups of people and suggested that report was contradicted by other reports and was not "significantly reported" to mental health care providers. (R. 24). She found that these allegations do not support a disabling level of impairment, but she did not specify any limitations. Id. Finally, as quoted above the ALJ discussed Plaintiff's mental health, and in doing so she found that Plaintiff's individual therapy was mainly to address plaintiff's living situation and that Plaintiff "noted improvement in her condition" after getting out of her living situation for a while in May 2013 and going to visit her mother. Id. at 26. She found "that non-vocational factors have a strong impact on the claimant's condition," and suggested that work would provide an escape from Plaintiff's living situation on a daily basis and the ability to leave the situation in the long term. Id. She concluded by finding that Plaintiff's work functioning would not be greatly affected by her mental condition and that her pain was a manifestation of her mental condition which would partially account for her being off-task ten percent of the time and absent one day a month. Id.

The only record evidence cited by the ALJ in summarizing and discussing Plaintiff's mental impairments was Plaintiff's hearing testimony, her function report (Ex. 4E, R. 195-208), and mental health treatment records (Ex. 17F, R. 496-515). (R. 22-23, 24, 26). That evidence (and the court's review of the other record evidence) will not support the ALJ's findings regarding mental impairments. First, the court notes it simply

cannot ascertain where the limitations to being off-task ten percent of the time and absent one day a month come from. The court recognizes that assessing such limitations is the duty of the ALJ, and that duty includes considerable leeway to make approximations and resolve ambiguities. But, the ALJ must explain the bases for her findings. It is insufficient to assert that such limitations are accounted for partly by physical impairments and partly by mental. She must explain the evidentiary basis for the finding and the path through which it was determined.

The ALJ asserts that Plaintiff's individual therapy was "mainly to address her living situation." (R. 26). But the record will not support that assertion. Plaintiff's "Treatment Plan documented on intake says nothing about living situations in general or Plaintiff's living situation in particular. (R. 515). Although the individual psychotherapy treatment notes frequently include details of Plaintiff's living situation in summaries of the "Topics discussed," there is no indication that the therapy was mainly to address Plaintiff's living situation. (R. 500, 509, 510, 513). In fact, every psychotherapy treatment note states that its goals "are to improve mood and functioning" but does not suggest a goal to address Plaintiff's living situation (R. 500, 509-13).

In May 2013, Plaintiff reported at her psychotherapy session that "she was feeling better," and that she "spent a week or so with her mother." (R. 500). Later in the month she had a visit with her psychiatrist, who also noted that she "indicates she is doing better," and that "[s]he spent 6 days with her mother over Mother's Day." (R. 497). Neither the psychiatrist nor the psychologist stated that the reason Plaintiff was doing

9

better was because she had gotten a short reprieve from her living situation while she visited her mother.  Id., at 497, 500.  While there is no doubt that a change from living with an ex-husband Plaintiff described as difficult to be around, to staying 6 days with her mother would provide a subjective lift in spirits, that fact won't carry the weight suggested in the ALJ's decision--that non-vocational factors have a strong effect on Plaintiff's condition, and that work would not be negatively impacted by her mental condition because it would take her out of a bad living situation.  That is merely speculation on the ALJ's part.

Remand is necessary because the record evidence will not support the ALJ's findings regarding Plaintiff's mental RFC.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 15th  day of September 2016, at Kansas City, Kansas.


                                        s:/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**